UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Loren Gesinsky (LG-7307)
GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York  10119
(212) 613-2000

RUBEN NIDZON,

Plaintiff,

vs.

KONICA MINOLTA BUSINESS
SOLUTIONS USA, INC. and KONICA
MINOLTA HOLDINGS, INC.,

Defendants.

JUDGE JONES

Civil Action No. 07 CIV 3724

NOTICE OF REMOVAL



RECEIVED
MAY 10 2007
U.S.D.C. S.D. N.Y.
CASHIERS

TO:   THE JUDGES OF THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF NEW YORK

      Sheldon H. Gopstein, Esq.
      The Law Offices of Sheldon H. Gopstein, Esq.
      130 West 42nd Street, Suite 410
      New York, New York   10036
      *Attorney for Plaintiff*

Pursuant to 28 U.S.C. § 1441(a) and (b), Defendants Konica Minolta Business Solutions

U.S.A., Inc. and Konica Minolta Holdings, Inc. (collectively referred to as "Defendants") file

this Notice of Removal of the action — which includes claims under Title VII of Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e-2 et seq. ("Title VII") — from the Supreme Court

of the State of New York, County of New York, to the United States District Court for the

Southern District of New York and respectfully represents as follows:

1.     On March 17, 2007, Plaintiff filed a Complaint in the Supreme Court of the State of New York, County of New York entitled *Ruben Nidzon v. Konica Minolta Business Solutions U.S.A., Inc. and Konica Minolta Holdings, Inc.* ("the State Court Action").

2.     On April 10, 2007, Defendant Konica Minolta Business Solutions U.S.A., Inc. first received the Summons and copy of the Complaint, when same was served by hand delivery at its Manhattan office at 420 Lexington Avenue, 28th Floor, New York, NY 10170. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint are attached as Exhibit A.

3.     This Notice is filed within 30 days of KMBS' first receipt of the initial pleading setting forth Plaintiff's claims for relief and, therefore, is timely pursuant to 28 U.S.C. § 1446(b).

4.     As of this date, Defendant Konica Minolta Holdings, Inc. has not been properly served with process. Further, by filing this notice of removal Defendant Konica Minolta Holdings, Inc., neither consents to the jurisdiction of the United States District Court for the Southern District of New York nor waives any defenses, including defective service.

5.     On April 26, 2007, the parties entered into a Stipulation extending Defendants' time to answer or otherwise move until May 21, 2007. A copy of the Stipulation is attached as Exhibit B. Defendants have neither filed a responsive pleading in the state court action commenced by Plaintiff nor have they received any other pleading, process or order relating to that action.

6.     This action may properly be removed to the United States District Court pursuant to 28 U.S.C. § 1441(b) because the Court has original federal question jurisdiction over it pursuant to 28 U.S.C. § 1331. As set forth in the Complaint, Plaintiff alleges violations of Title VII.

7.     This Notice of Removal is being filed in the Southern District of New York, the district court of the United States for the district within which the State Court Action is pending, as required by 28 U.S.C. §§ 1446(a) and 1441(a).

7.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to Plaintiff, and a copy of the Notice of Removal will be filed with the Clerk of the Supreme Court of the State of New York, County of New York, in the form attached as Exhibit C.

8.     This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a).

WHEREFORE, Defendants respectfully request that this action be duly removed to this Court, and that it proceed herein.

GIBBONS P.C.
One Pennsylvania Plaza, 37th Floor
New York, New York
(212) 613-2000
Attorneys for Defendants Konica Minolta
Business Solutions U.S.A., Inc. and
Konica Minolta Holdings, Inc.

By:_____
     Loren Gesinsky (LG-7307)

DATED:     May 10, 2007
           New York, New York

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

RUBEN NIDZON,                                                    :    Index No. 103721/07
                                                                :    Filed 3/19/2007
                                        Plaintiff,              :
                                                                :    The basis of the venue is
                       -against-                                :    Defendants' place of business
                                                                :
KONICA MINOLTA BUSINESS SOLUTIONS USA, INC.    :    **SUMMONS**
and KONICA MINOLTA HOLDINGS, INC.,                     :
                                                                :    Plaintiff resides at:
                                        Defendants.             :    Bayonne, New Jersey
-------------------------------------------------------------------X

To the above-named defendants:

   *YOU ARE HEREBY SUMMONED* to answer the Complaint in this action and to serve a
copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of
appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York), and in the case of your failure to appear
or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: March 19, 2007

                                              **Law Offices of Sheldon H. Gopstein, Esq.**
                                              Attorneys for the Plaintiff

                                              By: _____
                                                      Sheldon H. Gopstein

                                              130 West 42nd Street, Suite 410
                                              New York, NY 10036
                                              (212) 363-2400

Defendants' addresses:

Konica Minolta Business Solutions USA, Inc.
420 Lexington Avenue, 28th Floor
New York, NY 10170

Konica Minolta Holdings, Inc.
420 Lexington Avenue, 28th Floor
New York, NY 10170

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

RUBEN NIDZON,                                          : Index No. 103721/07

                              Plaintiff,               :

             -against-                                 : **COMPLAINT**

KONICA MINOLTA BUSINESS SOLUTIONS USA, INC.            :
and KONICA MINOLTA HOLDINGS, INC.,                     :

                              Defendants.              :
------------------------------------------------------------------X

      Plaintiff, Ruben Nidzon, by his undersigned attorney, as and for his complaint against the defendants, alleges as follows:

### Parties

      1. Plaintiff is a resident of the State of New Jersey.

      2. Upon information and belief, defendant Konica Minolta Business Solutions USA, Inc. ("KMBS") is a New York corporation headquartered in Ramsey, New Jersey. At all times relevant, KMBS maintained offices and conducted business at 420 Lexington Avenue, New York, New York.

      3. Upon information and belief, defendant Konica Minolta Holdings, Inc. ("KMH") is a foreign corporation with offices in Windsor, Connecticut and New York, New York. At all times relevant, KMBS was a wholly owned and controlled subsidiary and/or division of KMH.

### Background

      4. Plaintiff was hired by Minolta Business Systems in June 1988. He worked as a field service technician based out of the Totowa, New Jersey office. In August 1999, plaintiff joined Minolta Business Systems in New York City as a field service color technician.

      5. In or about April 2004, Minolta Business Solutions (f/k/a Minolta Business Systems) merged with Konica to form KMBS. There were substantial changes in personnel and management at the time of the merger.

6. After nearly eighteen years of loyal service, plaintiff was fired from his job on February 17, 2006.

7. Plaintiff is a member of the Jewish religion. At all times relevant, plaintiff's religion was known to his managers, supervisors and company officers.

### The Discrimination Begins

8. On the morning of July 8, 2004, plaintiff attended a meeting of the color division technicians in the main conference room at the KMBS office on the 28th floor of 420 Lexington Avenue, New York, New York. There were a total of 11 employees present at various points during the meeting. Clyde Siriram, the branch service manager, joined the meeting in progress. Within a few minutes, he deviated from the agenda of the meeting and began to verbally abuse the plaintiff. He criticized the plaintiff for allegedly failing to shave that morning while at least three other co-workers seated across the table also appeared unshaven. The plaintiff explained that he shaved the previous evening. While Mr. Siriram was discussing charges for network services, the plaintiff asked him to clarify the company policy which had generated numerous customer complaints in the past. Mr. Siriram went into a tirade. He approached the plaintiff pointing his finger directly at the plaintiff and said, "You're a pussy, you're a coward, you're a little dog with your tail between your legs." He continued his diatribe, boldly declaring, "I want you to know right now that we Indians are cheaper than the Jews, and you know how cheap the Jews are." The plaintiff was stunned and humiliated. Plaintiff reported the July 8 incident to Human Resources on July 13, 2004.

9. Mr. Siriram's offensive and discriminatory conduct continued unabated. He regularly criticized the plaintiff without justification and accused the plaintiff of failing to follow fictional and evolving rules and regulations. During a meeting in July of 2004, Mr. Siriram threatened to fire the plaintiff, saying "You're going right out the door." Mr. Siriram also instructed plaintiff's managers to keep close tabs on the plaintiff in order to find excuses to criticize his work performance.

2

### The Investigation and Cover-Up

10. Several weeks after plaintiff lodged his complaint with Human Resources, he was called into Mr. Siriram's office and introduced to Donald Warwick, Vice President of Human Resources, via speakerphone. Also present was Nelson Candelario, plaintiff's field service manager at the time. The meeting began with Mr. Warwick claiming to have investigated the matter but then he accused the plaintiff of "insubordination" for certain comments made to Andrea Comstock-Tague, Human Resources Specialist, in the course of reporting the July 8 incident. Rather than asking the plaintiff a single question about his complaint and the circumstances of the July 8 incident, Mr. Warwick deflected attention away from the complaint and made the plaintiff feel as if he was the focus of the investigation. Mr. Warwick offered excuses for Mr. Siriram's offensive behavior, explaining that Mr. Siriram had previously worked with Jews and was accustomed to making similar crude and anti-semitic comments. Allegedly, his prior Jewish co-workers tolerated Mr. Siriram, and, therefore, it was implied that the plaintiff should grin and bear it as well. The plaintiff was incredulous at the justification being offered by a Vice President of the company. Mr. Warwick concluded by saying, "I don't want to hear of this matter any more. Play nice." After Mr. Warwick ended the conference call, Mr. Siriram stared at the plaintiff with a grin on his face and asked the plaintiff: "Do you have anything else to say." The plaintiff walked out of the room disgusted.

11. Despite Mr. Warwick's claim to have fully investigated the matter, none of the other nine employees in attendance at the July 8 meeting were questioned by anyone from Human Resources. Clearly, the defendants' sole motive was to cover up Mr. Siriram's unlawful conduct.

### The Discrimination and Hostility Continues

12. In the Fall of 2004, plaintiff expected his usual annual review and salary evaluation. It never came. Plaintiff asked his new field service manager, Steve Blackwell, about the annual review. Mr. Blackwell said it had been pushed back to November. In November 2004, plaintiff again asked Mr. Blackwell about the annual review. Mr. Blackwell said it had been pushed back to January 2005. He gave no explanation. In January 2005, while passing Mr. Siriram in the

3

hallway outside of the KMBS offices, plaintiff asked if Mr. Siriram knew when plaintiff would receive his annual review. Mr. Siriram turned toward the plaintiff and replied, "You need a review? Don't the Jews have enough money?" Plaintiff was shocked and outraged but kept walking. Plaintiff considered reporting the incident to Human Resources but was so demoralized from his prior experience with Mr. Warwick that he decided it would be a waste of time and would only cause him further hardship.

### KMBS Retaliates Against the Plaintiff

13. After plaintiff reported the July 8 incident to Human Resources, the defendants embarked on a campaign of harassment and retaliation. As described above, plaintiff was denied his annual review and salary evaluation in 2004, but that was only the beginning.

14. In late February 2005, plaintiff requested his usual one week vacation at the end of March and another week at the end of April. Plaintiff had been allowed a one week vacation at or about the end of March for the past ten years or more. Plaintiff was told by his manager, Steve Blackwell, that Mr. Siriram had denied the plaintiff's March vacation request. The excuse given was that there were an increased number of service calls due to tax season. However, plaintiff exclusively worked on color machines which are mainly used for graphics, not text. The tax season explanation was nothing but a ruse.

15. In early March 2005, Mr. Siriram suddenly stopped the plaintiff from answering service calls for all color copier and printer models except the 900 series. Mr. Blackwell told the plaintiff that Mr. Siriram would no longer permit the plaintiff to work on any machines without formal training. This was nothing more than a transparent attempt to reduce the plaintiff's productivity. Prior to this time, plaintiff had regularly serviced various types of color machines, including series 1501, 2001, 2001P, 2002, 3102, 3102P and C350, without formal training on those machines. Ironically, when the other color technician, James Serrano, called in sick a few days later, the new company policy was rescinded immediately and plaintiff was put back to work on the color machines. Plaintiff subsequently completed formal training on all models to which he was assigned.

4

16. Plaintiff sent e-mails to the Human Resources Department on March 8 and March 14, 2005, complaining about the denial of his vacation request and the sudden changes in company policy. The response from Human Resources, dated March 18, 2005 ("the March 18 letter"), was filled with distortion, contradiction and further attacks on the plaintiff. The March 18 letter reiterated the denial of plaintiff's March vacation request due to the tax season and added the claim that the training schedule of other technicians in the branch was also a factor. While tax season has a marginal effect on color technicians, it is curious that the other non-color technicians would be scheduled for training in the middle of the supposedly heightened demands of tax season. The defendants' proposed solution was for the plaintiff to take five single days of vacation rather than a full week. This was unreasonable and unacceptable to the plaintiff. The March 18 letter also falsely alleged that plaintiff was unable to properly service any machines other than the 900 series. In fact, plaintiff regularly serviced other machines including the series 1501, 2001, 2001P, 2002, 3102, 3102P and C350 models. The March 18 letter further chastised the plaintiff for his reduced numbers of daily service calls and alleged refusal to attend training classes. In fact, plaintiff was often passed over for training by management, and the temporary reduction in service calls was the direct result of Mr. Siriram's edict restricting the plaintiff to the 900 series machines. The March 18 letter also falsely accused the plaintiff of refusing to service even 900 series equipment outside of plaintiff's territory. In fact, plaintiff's work logs clearly show that he often performed service calls in the territories of other technicians.

17. Plaintiff replied to the March 18 letter by e-mail on March 25, 2005, stating, "This letter I have here is a great piece of fiction. ... Obviously this is just another form of harassment once again. I should have not expected a fair shake from a company that condones bigotry and consumer fraud." Point by point, plaintiff denied the allegations leveled against him. He also accused company managers of committing consumer fraud by forcing technicians to install used parts. In fact, it was a regular practice for company managers to require technicians to install used, reconditioned and inferior parts, often from unauthorized outside suppliers, in order to increase

5

profits. It was clear to company management at this juncture that they had a potential whistle blower on their hands, and they needed to tread more carefully.

18. Notwithstanding plaintiff's commendable and consistent job performance (as borne out by extremely positive customer feedback), plaintiff received a Final Letter of Warning from Donald J. Warwick on April 18, 2005. In fact, the Final Letter of Warning was the first and only letter of warning! The Final Letter of Warning begins by asserting, "Ruben, as you are aware, the company has been conducting an investigation into the allegations that have been made relating to your conduct." Plaintiff was not aware of any such purported investigation. If anything, plaintiff expected an investigation of Mr. Siriram's religious insults and discriminatory conduct as reported to Human Resources. Instead, KMBS continued to retaliate against the plaintiff by unfairly scrutinizing his job performance and making false allegations of misconduct.

19. The Final Letter of Warning confirms to the plaintiff that "your customers appear to view your service to their accounts in a positive light." The letter also comments on the "skill and knowledge you appear to possess" and that "you possess the skill and ability to successfully perform as a Color Specialist." These remarkable admissions should put to rest KMBS's prior false claims that the plaintiff did not possess the requisite skill and training to enable him to service the equipment properly. Yet, the Final Letter of Warning proceeds to concoct a tale of alleged misconduct and insubordination. For example, plaintiff is accused of refusing to comply with management directives to service customers outside of his assigned territory. That claim, amongst others, is utterly false and asserted only as a cover-up or pretext for unlawful discrimination.

20. During the ensuing months, plaintiff's manager, Steve Blackwell, continued to single out the plaintiff unfairly and seemingly criticized the plaintiff no matter what he did. Apparently, Mr. Blackwell was doing Mr. Siriram's dirty work.

21. On December 27, 2005, plaintiff's manager, Steven Blackwell, issued a Letter of Concern to plaintiff claiming that "you are not following standard company procedure." Mr. Blackwell accused plaintiff of ordering parts without first calling for authorization when, in fact,

6

plaintiff routinely called Mr. Blackwell for authorization, but his calls were often ignored. Once again, plaintiff was wrongly accused of misconduct and singled out for criticism in retaliation for his complaints to Human Resources.

22. On February 17, 2005, plaintiff was called into Mr. Siriram's office by Mr. Blackwell. Mr. Warwick joined the meeting on speakerphone. Mr. Warwick abruptly notified plaintiff that his employment was terminated. Mr. Warwick instructed Mr. Siriram to confiscate plaintiff's communication gear and computer and to escort plaintiff from the office, then he ended the call. There was no verbal or written explanation for the termination. At that point, plaintiff turned to Mr. Siriram and asked him if he had any more comments to offer about Jews. Mr. Siriram kept his mouth shut this time. Mr. Blackwell then escorted plaintiff out of the office.

23. Plaintiff never received any official notification of the termination of his employment and never had an exit interview.

24. Plaintiff did not receive the thirty-six (36) weeks of severance pay and nine (9) months COBRA reimbursement to which he was entitled based upon his length of service with the company in accordance with the Standard Operating Procedures of KMBS.

### FIRST CAUSE OF ACTION
#### (Religious Discrimination Under US Title VII)

25. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

26. Plaintiff at all times performed the duties of his job fully, faithfully and conscientiously.

27. The warnings, criticisms and heightened scrutiny of the plaintiff's conduct were only a pretext for discrimination.

28. The discriminatory actions of the defendants, by their officers, agents or managers, which culminated in the termination of plaintiff's employment, were motivated by religious animus.

29. The defendants acted with malice and/or reckless indifference to the statutorily

7

protected rights of the plaintiff.

30. The defendants have discriminated against the plaintiff with respect to his compensation, terms, conditions and/or privileges of employment due to his religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

31. By reason of the acts and conduct of the defendants as aforesaid, plaintiff has sustained and will continue to sustain great pain, suffering, distress, injury and damage.

### SECOND CAUSE OF ACTION
### (Retaliation Under US Title VII)

32. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

33. Plaintiff at all times performed the duties of his job fully, faithfully and conscientiously.

34. The defendants retaliated against the plaintiff for his opposition to, and reporting of, unlawful employment practices.

35. The defendants acted with malice and/or reckless indifference to the statutorily protected rights of the plaintiff.

36. By the acts and practices described above, including but not limited to the retaliatory discharge of the plaintiff, the defendants have violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

37. By reason of the acts and conduct of the defendants as aforesaid, plaintiff has sustained and will continue to sustain great pain, suffering, distress, injury and damage.

### THIRD CAUSE OF ACTION
### (Religious Discrimination Under The NY Human Rights Law)

38. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

39. Plaintiff at all times performed the duties of his job fully, faithfully and conscientiously.

8

40. The warnings, criticisms and heightened scrutiny of the plaintiff's conduct were only a pretext for discrimination.

41. The discriminatory actions of the defendants, by their officers, agents or managers, which culminated in the termination of plaintiff's employment, were motivated by religious animus.

42. The defendants acted with malice and/or reckless indifference to the statutorily protected rights of the plaintiff.

43. The defendants have discriminated against the plaintiff in violation of Article 15, Section 296, of the Executive Law of the State of New York (a/k/a "The Human Rights Law").

44. By reason of the acts and conduct of the defendants as aforesaid, plaintiff has sustained and will continue to sustain great pain, suffering, distress, injury and damage.

### FOURTH CAUSE OF ACTION
### (Retaliation Under The NY Human Rights Law)

45. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

46. Plaintiff at all times performed the duties of his job fully, faithfully and conscientiously.

47. The defendants retaliated against the plaintiff for his opposition to, and reporting of, unlawful employment practices.

48. The defendants acted with malice and/or reckless indifference to the statutorily protected rights of the plaintiff.

49. By the acts and practices described above, including but not limited to the retaliatory discharge of the plaintiff, the defendants have violated Article 15, Section 296, of the Executive Law of the State of New York (a/k/a "The Human Rights Law").

50. By reason of the acts and conduct of the defendants as aforesaid, plaintiff has sustained and will continue to sustain great pain, suffering, distress, injury and damage.

9

## FIFTH CAUSE OF ACTION
### (Religious Discrimination Under The NYC Administrative Code)

51. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

52. Plaintiff at all times performed the duties of his job fully, faithfully and conscientiously.

53. The warnings, criticisms and heightened scrutiny of the plaintiff's conduct were only a pretext for discrimination.

54. The discriminatory actions of the defendants, by their officers, agents or managers, which culminated in the termination of plaintiff's employment, were motivated by religious animus.

55. The defendants acted with malice and/or reckless indifference to the statutorily protected rights of the plaintiff.

56. The defendants have discriminated against the plaintiff in violation of the N.Y.C. Administrative Code §8-101 et seq. (a/k/a "The New York City Human Rights Law").

57. By reason of the acts and conduct of the defendants as aforesaid, plaintiff has sustained and will continue to sustain great pain, suffering, distress, injury and damage.

## SIXTH CAUSE OF ACTION
### (Retaliation Under The NYC Administrative Code)

58. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

59. Plaintiff at all times performed the duties of his job fully, faithfully and conscientiously.

60. The defendants retaliated against the plaintiff for his opposition to, and reporting of, unlawful employment practices.

61. The defendants acted with malice and/or reckless indifference to the statutorily protected rights of the plaintiff.

10

62. By the acts and practices described above, including but not limited to the retaliatory discharge of the plaintiff, the defendants have violated N.Y.C. Administrative Code §8-101 et seq. (a/k/a "The New York City Human Rights Law").

63. By reason of the acts and conduct of the defendants as aforesaid, plaintiff has sustained and will continue to sustain great pain, suffering, distress, injury and damage.

## SEVENTH CAUSE OF ACTION
### (Failure to Pay Wages Under The NY Labor Law)

64. Plaintiff hereby repeats and reiterates each and every allegation set forth in paragraphs 1 through 24 of this Complaint as though fully set forth herein.

65. The severance pay and insurance benefits owed to plaintiff are "wages" within the meaning of Article 6, Section 198-c, of the Labor Law of the State of New York.

66. The failure on the part of the defendants to pay plaintiff his severance and insurance benefits was willful and deliberate.

67. By reason of the foregoing, and pursuant to Article 6, Section 198, of the Labor Law of the State of New York, there is due and owing to plaintiff a sum equal to thirty-six (36) weeks of severance pay and nine (9) months COBRA reimbursement, plus reasonable attorney's fees and liquidated damages equal to 25% of the total amount of the wages found to be due.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, with interest, costs, disbursements and attorneys' fees, as follows:

(a) On the First Cause of Action: Compensatory damages in the sum of $10,000,000, plus punitive damages in the sum of $10,000,000;

(b) On the Second Cause of Action: Compensatory damages in the sum of $10,000,000, plus punitive damages in the sum of $10,000,000;

(c) On the Third Cause of Action: Compensatory damages in the sum of $10,000,000, plus punitive damages in the sum of $10,000,000;

(d) On the Fourth Cause of Action: Compensatory damages in the sum of

11

$10,000,000, plus punitive damages in the sum of $10,000,000;

(e)    On the Fifth Cause of Action:  Compensatory damages in the sum of $10,000,000, plus punitive damages in the sum of $10,000,000;

(f)    On the Sixth Cause of Action:  Compensatory damages in the sum of $10,000,000, plus punitive damages in the sum of $10,000,000;

(g) On the Seventh Cause of Action: Damages equal to thirty-six (36) weeks of severance pay and nine (9) months COBRA reimbursement, plus reasonable attorney's fees and liquidated damages equal to 25% of the total amount of the wages found to be due.

(h) Such other and further relief as this Court may deem just, proper and equitable.

Dated: March 19, 2007

LAW OFFICES OF SHELDON H. GOPSTEIN, ESQ.

By: _____
        Sheldon H. Gopstein

Attorneys for the Plaintiff

130 West 42nd Street, Suite 410
New York, NY 10036
Tel. (212) 363-2400

12

Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| RUBEN NIDZON,<br><br>              Plaintiff,<br><br>vs.<br><br>KONICA MINOLTA BUSINESS<br>SOLUTIONS USA, INC. and KONICA<br>MINOLTA HOLDINGS, INC.,<br><br>          Defendants. | Index. No. 103721/07<br><br>**STIPULATION FOR EXTENSION OF TIME<br>TO ANSWER, MOVE OR OTHERWISE PLEAD** |

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned that Defendants Konica Minolta Business Solutions U.S.A., Inc. and Konica Minolta Holdings, Inc. shall have an initial extension of time through and including May 21, 2007, to answer, move or otherwise plead in this action. The time for Defendants' responses has not yet expired and no prior extensions of time have been granted to Defendants.

IT IS FURTHER STIPULATED AND AGREED that by entering into this Stipulation, Defendant Konica Minolta Business Solutions U.S.A., Inc. hereby waives jurisdictional defenses for purposes of this action.

IT IS FURTHER STIPULATED AND AGREED that by entering into this Stipulation, Defendant Konica Minolta Holdings, Inc. reserves all defenses, including jurisdiction.

IT IS FURTHER STIPULATED AND AGREED that: (1) this Stipulation may be executed in counterparts, (2) facsimile signatures shall have the same force and effect as originals, and (3) any party may file this Stipulation with the Court without further notice.

**The Law Offices of Sheldon H. Gopstein, Esq.**
130 West 42nd Street, Suite 410
New York, NY 10036
(212) 363-2400
Attorney for Plaintiff
Ruben Nidzon

By: _____
Sheldon H. Gopstein, Esq.

Dated:   April 26, 2007

**Gibbons P.C.**
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
(212) 613-2000
Attorneys for Defendants
Konica Minolta Business Solutions, U.S.A.,
Inc. and Konica Minolta Holdings, Inc.

By: _____
Alychia L. Dragon, Esq.

Dated:   April 26, 2007

Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RUBEN NIDZON,

                    Plaintiff,

vs.

KONICA MINOLTA BUSINESS
SOLUTIONS USA, INC. and KONICA
MINOLTA HOLDINGS, INC.,

                    Defendants.

Index No. 103721/07

NOTICE OF NOTICE OF REMOVAL

TO:   Sheldon H. Gopstein, Esq.
      The Law Offices of Sheldon H. Gopstein, Esq.
      130 West 42nd Street, Suite 410
      New York, New York   10036
      *Attorney for Plaintiff*

PLEASE TAKE NOTICE that Defendants Konica Minolta Business Solutions U.S.A.,

Inc. and Konica Minolta Holdings, Inc. (collectively referred to as "Defendants") in the above-

captioned action have this day filed a Notice of Removal, a copy of which is attached hereto, in

the Office of the Clerk of the United States District Court for the Southern District of New York.

You are also advised that Defendants, upon the filing of said Notice of Removal, filed a copy of

the Notice with the Clerk of the Supreme Court of the State of New York, County of New York,

which has effected this removal in accordance with 28 U.S.C. § 1446(e).

                              GIBBONS P.C.
                              One Pennsylvania Plaza, 37th Floor
                              New York, New York
                              (212) 613-2000
                              Attorneys for Defendants Konica Minolta
                              Business Solutions U.S.A., Inc. and
                              Konica Minolta Holdings, Inc.

                              By:_____
                                   Loren Gesinsky

DATED:    May 10, 2007
          New York, New York